# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

PNC BANK, NATIONAL ASSOCIATION,

   Plaintiff,

v.              Case No: 6:14-cv-248-Orl-37KRS

LUCMAUR, LLC, CENTER FOR
DERMATOLOGY & SKIN SURGERY,
ENID F. BURNETT, MD, P.A., ENID F.
BURNETT and LONGWOOD OFFICE
PARK OWNERS ASSOCIATION, INC.,

   Defendants.

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

   This cause came on for consideration without oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSE (Doc. No. 53)** |
| **FILED:** | **July 15, 2014** |

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' . . . COUNTERCLAIMS AND MOTION TO STRIKE JURY TRIAL DEMAND (Doc. No. 54)** |
| **FILED:** | **July 15, 2014** |

### I. PROCEDURAL HISTORY.

   Plaintiff, PNC Bank, National Bank Association ("PNC"), filed a verified complaint against (a) LucMaur, LLC ("LucMaur"); (b) Center for Dermatology & Skin Surgery, Enid F. Burnett, MD,

P.A. ("CDSS"); (c) Enid F. Burnett; and, (d) Longwood Office Park Owners Association, Inc. ("Longwood Owners Association").[1]  Doc. No. 1.  PNC alleges that its predecessor in interest, RBC Bank (USA) ("RBC"), made a loan to LucMaur in August 2008, which was evidenced by a promissory note and secured by a mortgage on real property, a security interest in all rents, revenue and income from the property, a commercial guaranty executed by CDSS, and a commercial guaranty executed by Burnett (collectively, "the Loan Documents").  *Id.* ¶¶ 14-22.  In March 2012, PNC merged with RBC, with PNC as the surviving entity.  *Id.* ¶¶ 22-23.  PNC now claims a breach of note against LucMaur (Count I), mortgage foreclosure against all Defendants (Count II), foreclosure of security interest in leases and rents against all Defendants (Count III), foreclosure of security interest in personal property against all Defendants (Count IV), breach of guaranty against CDSS (Count V), and breach of guaranty against Burnett (Count VI).  *Id.* at 8-17.

Defendants LucMaur, CDSS and Burnett (collectively "Counter Plaintifs") filed their answer and affirmative defenses on June 24, 2014, in which they assert one affirmative defense of fraud.  Doc. No. 47 at 6-7 ("Affirm. Def.").  Counter Plaintiffs separately filed a document entitled "Counter Claim," in which they assert two counterclaims against PNC: rescission (Count I) and fraud (Count II).  Doc. No. 48 ("Countercl.").  They demand a jury trial on all issues so triable.  *Id.* at 11.

PNC now moves to strike the affirmative defense pursuant to Fed. R. Civ. P. 12(f), to dismiss the counterclaims pursuant to Fed. R. Civ. P. 12(b)(6), and, alternatively, to strike the jury trial demand as to the counterclaim for rescission.  Doc. Nos. 53, 54.  Counter Plaintiffs have responded in opposition to the motions.  Doc. Nos. 58, 59.

---

[1] PNC served its verified complaint on Defendant Longwood Owners Association, but Longwood Owners Association has not appeared in this action and the Clerk of Court has entered a default against it. *See* Doc. Nos. 24, 30, 31.

These motions have been referred to the undersigned for issuance of a Report and Recommendation. Accordingly, the motions are now ripe for review.

## II.     APPLICABLE LEGAL STANDARDS.

*A.     Motion to Dismiss Counterclaims.*

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In a pleading alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In lieu of filing an answer to a counterclaim, the defendant may move to dismiss the counterclaim for failure to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under Rule 12, the movant bears the burden of demonstrating that no claim has been stated on which relief can be granted. *Larsen v. AirTran Airways, Inc.*, No. 8:07-cv-442-T-17TBM, 2007 WL 2320592, at *3 (M.D. Fla. Aug. 10, 2007).

To survive a motion to dismiss, a counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Patent Licensing & Inv. Co., LLC v. Green Jets Inc.*, No. 11–80689–CIV, 2011 WL 5513262, at *2 (S.D. Fla. Nov. 10, 2011) ("The pleading standards set forth in *Twombly* and *Iqbal* apply with equal force to counterclaims."). A claim is facially plausible when a court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

*B.     Motion to Strike Affirmative Defense.*

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "[A]

court may strike an affirmative defense if the defense is insufficient as a matter of law. For a court to find a defense insufficient as a matter of law, the defense must be (1) patently frivolous on the face of the pleadings, or (2) clearly invalid as a matter of law." *Wlodynski v. Ryland Homes of Fla. Realty Corp.*, No. 8:08-cv-361-T-JDW-MAP, 2008 WL 2783148, at *1-2 (M.D. Fla. July 17, 2008) (internal citations and quotations omitted). An affirmative defense must also conform to Fed. R. Civ. P. 8(c)(1), which requires a party only to "affirmatively state" any affirmative defense. Motions to strike affirmative defenses are disfavored, and a court should only strike a pleading if the matter sought to be stricken has no possible relationship to the controversy, may confuse the issues, or may otherwise prejudice a party. *Wlodynski*, 2008 WL 2783148, at *1.

### III.    ALLEGATIONS OF THE AFFIRMATIVE DEFENSE AND COUNTERCLAIMS.

Longwood Office Park LLC ("Longwood") was the developer of the Longwood Office Park Condominium project. Countercl. ¶¶ 12, 14. It was obligated to Fairwinds Federal Credit Union ("Fairwinds"), which held a global mortgage on the property comprising the Longwood Office Park Condominium project. *Id.* ¶ 13. Longwood was attempting to rejuvenate and sell the project. Despite its best efforts, the Longwood Office Park Condominium property was a failing project that had a negative loan to value ratio with Fairwinds. *Id.* ¶ 14.

The Counter Plaintiffs evidently approached Longwood and Fairwinds to discuss LucMaur's interest in purchasing a portion of the property comprising the Longwood Office Park Condominium project (the "Subject Property"). *Id.* ¶¶ 15-16. Longwood and Fairwinds directed them to RBC to fund the purchase, which would be secured by a purchase money mortgage. *Id.* ¶ 15. Upon information and belief, RBC, Fairwinds and Longwood had a pre-existing business relationship and were highly motivated to reduce the global debt encumbering the Longwood Office Park

Condominium project and property. *Id.* ¶ 20. Also upon information and belief, RBC paid Fairwinds and Longwood to help RBC originate the loan. *Id.* ¶ 28.

Sometime before August 28, 2008, Counter Plaintiffs, Longwood and Fairwinds met and communicated with RBC's representatives regarding the proposed transaction. Counter Plaintiffs were told by RBC that an appropriate income analysis and appraisal was necessary for Counter Plaintiffs to receive a loan in the amount of $1.17 million to purchase the Subject Property. *Id.* ¶¶ 16, 33. Counter Plaintiffs provided accurate financial information. *Id.* ¶ 17.

RBC knew that the appraised value of the Subject Property must be equal to or greater than the sales price of the Subject Property to meet the correct loan to value ratio needed for the loan approval and to comply with applicable federal and state regulations. *Id.* ¶ 21. Upon information and belief, RBC, Fairwinds and Longwood determined that the appraised value of the Subject Property had to be $1.3 million to obtain the correct loan to value ratio needed to have the loan approved. *Id.* ¶¶ 21, 23. Therefore, in August 2008, RBC, Fairwinds and Longwood sought and obtained a false appraisal to match the value they wanted to achieve, not an appraisal of the fair market value of the Subject Property. *Id.* ¶¶ 18, 23. RBC, Fairwinds and Longwood instructed RBC's in-house appraisal personnel to produce the appraisal at the value they needed to achieve. *Id.* ¶¶ 18-19. RBC also made false statements to Counter Plaintiffs knowingly and recklessly with the intention of deceiving Counter Plaintiffs and causing Counter Plaintiffs to believe and rely on those statements to their detriment. *Id.* ¶¶ 46-47.

RBC, Fairwinds and Longwood included and used false information in preparing the appraisal. *Id.* ¶ 17. Upon information and belief, the appraisal also did not accurately reflect the condition of the Subject Property, used comparable properties that were in much better condition than the Subject Property and in different locations than the Subject Property, and manipulated

figures of other properties to make them appear comparable to the Subject Property when they were not. *Id.* ¶ 23.  RBC submitted and used the appraisal as a true representation of the fair market value of the Subject Property, when RBC knew that it was not a true representation of the fair market value. *Id.* ¶ 24.  The true market value of the Subject Property at the time of the transaction was no more than $500,000.00. Affirm. Def. ¶ D.  In 2013, Counter Plaintiffs determined that the value of the Subject Property was no more than $450,000.00.  Countercl. ¶ 33.

Counter Plaintiffs were first presented with the loan application and other documents as part of a multi-document closing of the sales transaction on August 28, 2008. *Id.* ¶¶ 26, 29. No representative from RBC, Fairwinds or Longwood attended the closing or explained the loan documents, the loan process, the appraisal, or other disclosures or guarantees to Counter Plaintiffs. *Id.* ¶ 27.  Counter Plaintiffs were not provided with a copy of the closing or appraisal documents. *Id.* ¶ 22.  No one informed Counter Plaintiffs before signing the documents at closing that false information was included and used in the loan approval process. *Id.* ¶ 29.  Counter Plaintiffs relied on RBC to use accurate information and act honestly and fairly in its dealings with them, and they did not read every word of the documents presented to them. *Id.*

RBC induced Counter Plaintiffs to enter into the transaction by fraud. *Id.* ¶ 34.  Counter Plaintiffs would not have agreed to enter into the transaction if they knew that false and fraudulent information was used in the application and approval process and that the loan would not have properly been extended if accurate asset information had been used. *Id.* ¶ 36.  Counter Plaintiffs have suffered no less than $130,000.00 in damages as a result of RBC's conduct in orchestrating the loan. *Id.* ¶ 37.

## IV. ANALYSIS.

### A. *Motion to Dismiss Counterclaims.*

PNC seeks to dismiss the counterclaims with prejudice because Counter Plaintiffs failed to state claims on which relief can be granted and to plead their claims of fraud and rescission with the particularity required by Fed. R. Civ. P. 9. PNC also argues that the rescission claim is barred because Counter Plaintiffs waived their right to rescind and that both the fraud and rescission claims are barred by the Bank Statute of Frauds, Fla. Stat. § 687.0304. *See* Doc. No. 54. In addressing PNC's motion to dismiss, I will consider the counterclaim of fraud (Count II) before considering their counterclaim for rescission (Count I) because the rescission counterclaim is based on the alleged fraud. *See* Countercl. ¶ 44.

#### 1. Fraud (Count II).

Although not titled as such, it appears that Counter Plaintiffs intend to allege a claim for fraud in the inducement. *See id.* ¶ 34 ("RBC induced [Counter Plaintiffs] to enter into the mortgage, loan and guarantees by fraud."). Counter Plaintiffs allege that RBC perpetrated the fraud both by commission and by omission. *Id.* ¶ 46 ("RBC made false statements to [Counter Plaintiffs] and failed to disclose material information to [Counter Plaintiffs] knowingly and recklessly with the intention of deceiving [Counter Plaintiffs] and causing [Counter Plaintiffs] to believe those statements to their detriment.").

Under Florida law, to establish fraud in the inducement a party must show the following:

> 1) a misrepresentation of material fact, 2) the representer knew or should have known of [the] statement's falsity, 3) the representer intended that [the] representation would induce another to rely on it, and 4) the plaintiff suffered injury in justifiable reliance on such representation.

*Advisor's Capital Invs., Inc. v. Cumberland Cas. & Sur. Co.*, No. 8:05-cv-404-T-23MAP, 2007 WL 220189, at *2 (M.D. Fla. Jan. 26, 2007) (citing *Hillcrest Pac. Corp. v. Yamamura*, 727 So. 2d 1053,

1055 (Fla. 4th Dist. Ct. App. 1999)). A material omission may also support a fraud in the inducement claim, but only when there exists a duty to disclose the omitted information. *Id.* at *3 (citing *Cola v. Allstate Ins. Co.*, 131 F. App'x 134 (11th Cir. 2005), and *Friedman v. Am. Guardian Warranty Servs., Inc.*, 837 So. 2d 1165 (Fla. 4th Dist. Ct. App. 2003)).

PNC contends, among other arguments, that Counter Plaintiffs have not pleaded the allegedly false statements or material omissions with the particularity required by Rule 9. Generally, to satisfy Rule 9, a pleading alleging a claim of fraud must state the following:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (quotation omitted). "This means the who, what, when[,] where, and how: the first paragraph of any newspaper story." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006). Counter Plaintiffs contend that this standard is relaxed when the specific factual information about the fraud is peculiarly within the knowledge and control of the opposing party. Doc. No. 58 at 2 (citing *Hill v. Morehouse Med. Assocs., Inc.*, No 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003)).

PNC's position is correct with respect to the allegations of fraud by commission. To the extent that Counter Plaintiffs relied on false statements made by RBC, they have knowledge of what statements were made, when, where and in what manner the false statements were conveyed to them, and how they were misled by each false statement. Counter Plaintiffs have failed to allege fraud by commission with the requisite specificity.

As for fraud by omission, however, Counter Plaintiffs have the better argument. They allege that they did not receive copies of the allegedly false appraisal or other closing documents

and, thus, that knowledge of the nature of the false information created and used by RBC is uniquely within PNC's knowledge, as the successor in interest to RBC. "Rule 9(b)'s heightened pleading standard may be applied less stringently . . . when specific 'factual information [about the fraud] is peculiarly within the defendant's knowledge or control.'" *Hill*, 2003 WL 22019936, at *3 (quoting *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc.*, 755 F. Supp. 1040, 1052 (S.D. Ga. 1990), *reconsideration granted*, 755 F. Supp. 1055 (S.D. Ga. 1990)). "In that instance, the plaintiff may plead based upon information and belief, provided that she 'accompan[ies] [her] legal theory with factual allegations that make [her] theoretically viable claim plausible.'" *Id.* (citation omitted) (quoting *In re Rockefeller Ctr. Props, Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)).

Nevertheless, Counter Plaintiffs must still allege sufficient facts to state a facially plausible claim of fraud by omission as required by *Iqbal*. PNC argues that Counter Plaintiffs have not, and cannot, do so because, among other things, a lender has no duty to a borrower to disclose information, such as an appraisal, and the borrower has no right to rely upon the lender's appraisal. Doc. No. 54 at 13 (citing *McElrath v. ABN AMRO Mortg. Grp., Inc.*, No. 11-62216-CIV, 2012 WL 463893 (S.D. Fla. Feb. 13, 2012)).

PNC's argument overlooks another line of authority in Florida law that suggests that, under certain circumstances, a lender may have a duty to disclose information to a borrower. *See Barnett Bank of W. Fla. v. Hooper*, 498 So. 2d 923, 925 (Fla. 1986). In *Hooper*, the Florida Supreme Court stated as follows:

> [W]here a bank becomes involved in a transaction with a customer with whom it has established a relationship of trust and confidence, and it is a transaction from which the bank is likely to benefit at the customer's expense, the bank may be found to have assumed a duty to disclose facts material to the transaction, peculiarly within its knowledge, and not otherwise available to the customer.

*Id.* at 925. In *Capital Bank v. MVB, Inc.*, 644 So. 2d 515 (Fla. 3d Dist. Ct. App. 1994), the Florida Third District Court of Appeal found that special circumstances transformed a lender/borrower relationship into a fiduciary one when a representative of the bank advised the borrower to expand his business and acquire assets by, among other things, showing him a ballpark, inaccurate appraisal, and, thereafter, finalizing the transaction. *Id.* at 520-21. The court also affirmed an award of damages in favor of the borrower and against the bank on the breach of fiduciary duty claim. *Id.* at 522-23.

Counter Plaintiffs have not alleged sufficient facts to establish the special circumstances required to transform the ordinary lender/borrower relationship into one in which RBC assumed a duty to disclose material facts to them. Therefore, Counter Plaintiffs also have not alleged fraud by omission with the requisite specificity.

Accordingly, I recommend that the Court find that the motion to dismiss Count II of the counterclaim is well taken.

        2.       <u>Rescission (Count I)</u>.

A contract entered into as a result of fraudulent inducement results in a voidable contract. Accordingly, "Florida law provides for an election of remedies in fraudulent inducement cases: rescission, whereby the party repudiates the transaction, or damages, whereby the party ratifies the contract." *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 313 (Fla. 2000). "'[A] party seeking rescission must show, *inter alia*, that he has rescinded the contract and notified the other party of such rescission, has offered to return any benefits from the contract[,] and has no adequate remedy at law.'" *Bank of Am., N.A. v. GREC Homes IX, LLC*, No. 13-21718-CIV,

2014 WL 351962, at *9 (S.D. Fla. Jan. 23, 2014) (quoting *Gov't of Aruba v. Sanchez*, 216 F. Supp. 2d 1320, 1365 (S.D. Fla. 2002)).[2]

PNC argues that Counter Plaintiffs failed to state a plausible claim for rescission because, among other things, Counter Plaintiffs do not allege that they promptly rescinded the Loan Documents after discovering the alleged fraud in the inducement and notified PNC of their rescission. PNC is correct that these allegations are not included in the counterclaim. Therefore, I recommend that the Court find that that the motion to dismiss Count I of the counterclaim is also well taken.

### 3. Leave to Amend the Counterclaim.

PNC contends that the Court should not give Counter Plaintiffs leave to amend the counterclaim and, instead, dismiss both counts of the counterclaim with prejudice. As to the rescission claim, they assert that Counter Plaintiffs cannot state a claim for rescission because they have an adequate remedy at law asserted in the fraud claim and because they waived their right to rescind. As to both the rescission and fraud claims, they assert that the Bank Statute of Frauds bars the claims.

With respect to the rescission claim, under Florida law "that there is a related cause of action at law does not, alone, preclude maintaining a rescission claim." *Anchor Bank, S.S.B. v. Conrardy*, 763 So. 2d 360, 361 (Fla. 4th Dist. Ct. App. 1998). Rather, a claimant only needs to elect between inconsistent remedies before judgment is entered. *E. Portland Cement Corp. v. F.L. Smidth, Inc.*, No. 8:08-cv-637-T-24 TBM, 2009 WL 4730545, at *1 (M.D. Fla. Dec. 7, 2009) (quoting *Monco of*

---

[2] "Although the equitable remedy of rescission is generally not available unless the condition of the parties as it existed prior to the execution of the contract can be restored, there are recognized exceptions to the general rule . . . where the inability of the buyer to restore is caused by the very fraud perpetrated by the sellers." *Mulle v. Scheiler*, 484 So. 2d 47, 48 (Fla. 5th Dist. Ct. App. 1986) (citation omitted).

*Orlando, Inc. v. ITT Indus. Credit Corp.*, 458 So. 2d 332, 334 (Fla. 5th Dist. Ct. App. 1984)) (permitting plaintiff to proceed concurrently on separate claims of breach of contract and rescission). "[A] court is rarely able to determine the adequacy of a remedy at law at the pleading stage of a case before the facts are developed.  A ruling on the adequacy of the legal remedy is generally left until the end of a case, often after a jury renders a verdict on the entitlement to it."  *Billian v. Mobil Corp.*, 710 So. 2d 984, 991 (Fla. 4th Dist. Ct. App. 1998).  Therefore, the rescission claim is not due to be dismissed with prejudice on this basis.

Counter Plaintiffs correctly assert that PNC's argument that they waived their right to rescind is not appropriately raised in response to a motion to dismiss.  In resolving a motion to dismiss, the Court considers only the well-pleaded facts in the complaint.  *Cf. Toffel v. Baugher*, 111 So. 2d 290, 291 (Fla. 2d Dist. Ct. App. 1959) (the defense of waiver is an affirmative defense that is not available upon a motion to dismiss on the grounds that plaintiff failed to state a cause of action). The facts of the complaint in this case do not establish that Counter Plaintiffs waived their right to rescind.

Turning next to the Bank Statute of Frauds, Florida law provides that "[a] debtor may not maintain an action on [an agreement to lend or forbear repayment of money] unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor."  Fla. Stat. § 687.0304(1), (2).  This statute was "enacted to protect lenders from liability for actions or statements a lender might make in the context of counseling or negotiating with the borrower which the borrower construes as an agreement."  *Dixon v. Countrywide Fin. Corp.*, 664 F. Supp. 2d 1304, 1309 (S.D. Fla. 2009).  Here, PNC's reliance on § 687.0304 is misplaced.  Counter Plaintiffs are not seeking to enforce an oral agreement concerning the appraisal, nor are they asserting that PNC has violated any portion of an oral

agreement "to lend or forbear repayment of money." Therefore, the Bank Statute of Frauds does not bar leave to file an amended counterclaim.

Accordingly, I recommend that the Court give Counter Plaintiffs leave to file amended counterclaims if they can do so consistently with Rule 9 and Fed. R. Civ. P. 11. Under the Federal Rules of Civil Procedure, a counterclaim is not a pleading and it must be asserted as part of an answer. *See* Fed. R. Civ. P. 7, 13. Therefore, I recommend that the Court give Counter Plaintiffs leave to file an amended answer, which includes their amended counterclaims.

    B.    *Motion to Strike Affirmative Defense.*

If the Court accepts the recommendation that Counter Plaintiffs be permitted to file an amended answer, which includes amended counterclaims, then the motion to strike the affirmative defense of fraud may be denied as moot. If Counter Plaintiffs properly allege facts supporting a counterclaim for fraud in the inducement in the amended answer, those facts would be sufficient to support an affirmative defense of fraud. If Counter Plaintiffs do not properly allege facts supporting a counterclaim for fraud in the inducement in an amended answer, the Court may consider at that time a renewed motion to strike the affirmative defense if it is reasserted.

**V.    RECOMMENDATION.**

For the reasons discussed above, I **RESPECTFULLY RECOMMEND** that the Court do the following:

    1.    **GRANT in part** PNC's Motion to Dismiss Defendants' Counterclaims and Motion to Strike Jury Trial Demand (Doc. No. 54) and **DISMISS** both counterclaims with leave to file amended counterclaims in an amended answer within a time established by the Court; and

2. **DENY** Plaintiff's Motion to Strike Defendants' Affirmative Defense (Doc. No. 53) without prejudice.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on October 14, 2014.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy